UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

KATHRYN BAKER,

      Plaintiff

v.

NCL AMERICA, LLC, d/b/a
NCL AMERICA, NCL AMERICA INC. and
NORWEGIAN CRUISE LINE;
NCL (BAHAMAS) LTD d/b/a
NORWEGIAN CRUISE LINE,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, KATHRYN BAKER (hereinafter "Plaintiff" or "BAKER"), hereby sues the

Defendants, NCL AMERICA, LLC d/b/a NCL AMERICA, NCL AMERICA INC. and

NORWEGIAN CRUISE LINE; and NCL (BAHAMAS) LTD. d/b/a NORWEGIAN CRUISE

LINE (collectively referred to herein as "NCL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceed $75,000 exclusive of interest, costs,

and attorney's fees.

2.     **THE PLAINTIFF.**  The Plaintiff, KATHRYN BAKER (hereinafter "KATHRYN

BAKER"), is *sui juris* and is a citizen and resident of Chicago, Illinois.

3.     **THE DEFENDANTS**. The Defendant NCL AMERICA, LLC, d/b/a NCL

AMERICA, NCL AMERICA INC. and NORWEGIAN CRUISE LINE, is incorporated outside of

1

the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.      The Defendant, NCL (BAHAMAS) Ltd., A Bermuda Company d/b/a Norwegian Cruise Line is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

5.      Hereinafter the Defendants will be referred to collectively as "NCL" or "Defendants" or "the cruise line".

6.      **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendants.

7.      **VENUE AND PERSONAL JURISDICTION**. The Defendants, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

        (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

2

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

8.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

9.     **DATE OF THE INCIDENT**.  The incident occurred on November 17, 2018.

10.     **LOCATION OF THE INCIDENT.**    The incident occurred onboard the vessel the *NCL Pride of the America*, a ship in navigable water, while the Plaintiff was a passenger onboard.   Accordingly, Plaintiff's claims are governed by general maritime law.  Specifically, the Plaintiff's incident occurred in or in close proximity to the Aloha Deck also known as Deck 11 while the ship was in navigable waters.

11.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

12.     **DESCRIPTION OF THE INCIDENT:** NCL owns and/or operates more than seventeen (17) cruise ships.  NCL owes a duty of reasonable care under the circumstances. The circumstances giving rise to this cause of action are as follows. NCL acquired the unfinished vessel and had her towed to Germany for completion as *Pride of America* for their newly launched NCL America division. Under NCL, *NCL Pride of America* was lengthened from 850 feet (260 m). to 920 feet (280 m). NCL had the *NCL Pride of America* custom built to specifications and designs

3

which were made by or under the supervision and participation of NCL. The *NCL Pride of America* was designed by or at the direction of NCL's shoreside New Build and other shoreside departments. NCL employs architects, designers, and engineers.

13.      The *NCL Pride of America* has capacity for 2,186 passengers.  The exterior and interior of the ship was built in Germany at a shipyard under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment.  That includes the materials used on the Aloha Deck aboard the *NCL Pride of America* which caused this fall and these injuries.

14.      The *NCL Pride of America* was delivered to NCL as finished on June 7, 2005. NCL has operated and maintained the ship continuously since that time.  NCL also owns and operates 17 other cruise ships. NCL has operated and maintained all of its ships, continuously since the time when each of those ships were first built and put into service. And NCL also custom built to specifications and designs which were made by or under the supervision and participation of all NCL's ships. The design and construction of these ships was under the supervision and with the participation of NCL's personnel who were stationed onsite in the shipyard during construction. In March 23, 2013, *Pride of America* entered a fourteen-day dry dock in Honolulu, Hawaii to add 32 passenger cabins and to refurbish some public facilities. In February 2016 *Pride of America* entered a twenty-four-day dry dock period. During the 2016 dry dock, many of *Pride of America*'s public spaces, along with several of the ships' restaurants as well as bars and lounges, were

refreshed from top to bottom to receive a modern updated look with new contemporary décor and furniture as well as new lighting and flooring. NCL had complete control over all of the refurbishments including the design, construction and materials used.

15.     NCL is in the hospitality business. Areas like Deck 11 on NCL *Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which NCL is well-aware.

16.     On November 17, 2018 KATHRYN BAKER was on Deck 11 of *NCL Pride of America* on her way to breakfast. Ms. Baker stepped through a set of double doors to travel from the inside area of *NCL Pride of America* to the outside area of *NCL Pride of America*. As Ms. Baker stepped on the deck on the outside area of Deck 11 aboard *NCL Pride of America*, she slipped and fell on a large puddle of water which the Defendants had allowed to accumulate for an extended period of time.

17.     While Ms. Baker was still on the floor after having slipped and fallen on the puddle of water that the Defendants allowed to accumulate, Ms. Baker noticed a crew member nearby. However, that crew member did not come over to Ms. Baker after the slip and fall. Instead, Ms. Baker called to the crew member to radio for help. The crew member used her device to radio for help. Following Ms. Baker's slip and fall, a crew member placed a caution cone in the area where

Ms. Baker slipped and fell. When the Defendants' medical personnel arrived, one of the medical staff members inquired whether the caution cone had been there, and Ms. Baker informed them that a crew member had only placed the caution cone their following her slip and fall.

18.     Following the slip and fall, Ms. Baker reported this incident to the Defendants.  Ms. Baker received medical attention in the ship's infirmary for her injuries. Ms. Baker informed the Defendants' medical staff that her right shoulder was hurting numerous times before the Defendants' medical staff performed tests to diagnose the injury.

19.     NCL knew or should have known of the dangerously slippery condition of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018 for several reasons, including but not necessarily limited to the following. First, the large size of the puddle demonstrates that the puddle that been there for an extended period of time. Second, NCL cleans this floor regularly and knows from that cleaning/mopping that the floor becomes frequently, if not repetitively wet or contaminated by slick conditions. Third, NCL knows that the walkways on the inside and outside of the double entry doors on Deck 11 are a popular means of ingress and egress between Deck 11's amenities and other areas of the ship. NCL knows or should know that relevant industry standards, regulations, and codes dictate that its flooring should be kept safe for foreseeable conditions like the accumulation of water, food, spills, and liquids.  NCL knows from experience that these conditions regularity accumulate on its floors on Deck 11 and are thus foreseeable conditions. Fourth, NCL selects and/or approves of its flooring and therefore, knows or should know that it must select reasonably safe flooring under wet and dry conditions. Fifth, NCL knows from prior slip and fall incidents on Deck 11 and on floors similar to the flooring on which KATHRYN BAKER fell that the flooring becomes dangerously slick when wet and causes people to fall.

20.     The Defendants had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

21.     The Defendants had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition, including that the condition that existed in the walkway outside of the double entry doors on Deck 11 flooring which was unreasonably slippery when wet in violation of industry standards, regulations, and codes, and was apparent to any NCL's crew passing by, but not readily apparent to KATHRYN BAKER; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendants should have known about it.

22.     When KATHRYN BAKER slipped and fell, she injured her right ankle and tore a ligament in her right shoulder. The ankle injury and torn shoulder ligament cause Ms. Baker pain, swelling, and difficulty moving on a daily basis. These symptoms are permanent and are expected to continue in the future.

### COUNT I
### NEGLIGENT FAILURE TO MAINTAIN

23.     The Plaintiff, KATHRYN BAKER, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 22, above.

24.     This is an action for negligence of NCL failing to maintain the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*.

25.     **DUTIES OWED BY THE DEFENDANTS**.  NCL owes a "duty to exercise reasonable care for the safety of its passengers," including KATHRYN BAKER. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a

"duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

26.     NCL owes a duty as a common carrier to its passengers to maintain the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*..  NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Pride of America*. Areas like Deck 11 on NCL *Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. For these reasons, NCL's duty of care includes maintaining walking surfaces present in and around Decks 11, including the walkway where KATHRYN BAKER slipped and fell on November 17, 2018.

27.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

28.     The Defendants had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

29.     NCL knew or should have known of the dangerously slippery condition of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018 for several reasons, including but not necessarily limited to the following. First, the large size of the puddle demonstrates that the puddle that been there for an extended period of time. Second, NCL cleans this floor regularly and knows from that cleaning/mopping that the floor becomes frequently, if not repetitively wet or contaminated by slick conditions. Third,  NCL knows that the walkways on the inside and outside of the double entry doors on Deck 11 are a popular means of ingress and egress between Deck 11's amenities and other areas of the ship.

30.     Upon information or belief, NCL knows from prior slip and fall incidents on Deck 11 and on floors similar to the flooring on which KATHRYN BAKER fell that the flooring becomes dangerously slick when wet and causes people to fall. NCL documents slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

31.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger

Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

32.     The Defendants had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition, including that the condition existed in the walkway outside of the double entry doors on Deck 11 flooring which was unreasonably slippery when wet in violation of industry standards, regulations, and codes, and was apparent to any NCL's crew passing by, but not readily apparent to KATHRYN BAKER; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendants should have known about it.

33.     In the alternative, notice to the Defendants is not required because the Defendants (a) engaged in and was guilty of negligent maintenance; and/or (b) through its own acts and/or omissions the Defendants caused the dangerous condition to come about or exacerbated the dangerous condition through negligently mopping the floor. Therefore, no notice to the Defendants is required.

34.     **NCL BREACHES OF DUTY.**  NCL breached its duty to maintain and properly clean the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018.  NCL breached its duties to KATHRYN BAKER by its actions and conduct. NCL through its crew members failed to reasonably maintain or properly clean the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendants

in the proof of negligence or proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

35. **PROXIMATE CAUSE**: NCL's failure to maintain and properly clean the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018, proximately caused KATHRYN BAKER's injuries. Had NCL properly maintained and cleaned the walkway outside of the double entry doors on Deck 11, KATHRYN BAKER would have never slipped and fell on the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018.

36. **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, KATHRYN BAKER, demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from

the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO PROVIDE A REASONABLY SAFE SHIP

37.    The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-22, above.

38.    This is an action for negligence due to NCL's negligent failure to provide a reasonably safe ship.

39.    **DUTIES OWED BY NCL**: NCL owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances**.**" *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for its failure to provide a safe ship.

40.    NCL owes a duty as a common carrier to its passengers to maintain the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*..  NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Pride of America*. Areas like Deck 11 on NCL *Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area

of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. For these reasons, NCL's duty of care includes providing a reasonably safe ship.

41.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

42.     The Defendants had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

43.     NCL should have become aware that NCL was not providing a reasonably safe ship to passengers as there were slipping hazards not readily apparent to passengers.

44.     NCL knew or should have known of the dangerously slippery condition of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018 for several reasons, including but not necessarily limited to the following. First, the large size of the puddle demonstrates that the puddle that been there for an extended period of time. Second, NCL cleans this floor regularly and knows from that cleaning/mopping that the floor becomes frequently, if not repetitively wet or contaminated by slick conditions. Third,  NCL knows that the walkways on the inside and outside of the double entry doors on Deck 11 are a popular means of ingress and egress between Deck 11's amenities and other areas of the ship.

45.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

46.     Upon information or belief, NCL knows from prior slip and fall incidents on Deck 11 and on floors similar to the flooring on which KATHRYN BAKER fell that the flooring becomes dangerously slick when wet and causes people to fall. NCL documents slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

47.     **NCL BREACHED ITS DUTY**.  NCL breached its duty of care by failing to provide a reasonably safe ship. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

48.     **PROXIMATE CAUSE**: NCL's negligent failure to provide a reasonably safe ship proximately caused the Plaintiff's injuries.  Had NCL properly provided a reasonably safe ship, the Plaintiff would never have slipped and fallen on the ship.

49.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related

14

expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate

<u>COUNT III</u>
<u>NEGLIGENT FAILURE TO WARN</u>

50. The Plaintiff, KATHRYN BAKER, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 22, above.

51. This is an action for negligence of NCL failing to warn passengers, including KATHRYN BAKER, of its hazards, risks or dangers.

52. **DUTIES OWED BY THE DEFENDANTS**. NCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a

"duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendants' "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

53.     NCL owes a duty as a common carrier to its passengers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the NCL *Pride of America*. Areas like Deck 11 on NCL *Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. For these reasons, NCL's duty of care includes warning of dangerous walking surfaces present in and around Decks 11, including the walkway where KATHRYN BAKER slipped and fell on November 17, 2018.

54.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime

Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

55.     The Defendants had actual knowledge of the dangerous condition; and/or had constructive knowledge of the dangerous condition.

56.     NCL knew or should have known of the dangerously slippery condition of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018 for several reasons, including but not necessarily limited to the following. First, the large size of the puddle demonstrates that the puddle that been there for an extended period of time. Second, NCL cleans this floor regularly and knows from that cleaning/mopping that the floor becomes frequently, if not repetitively wet or contaminated by slick conditions. Third,  NCL knows that the walkways on the inside and outside of the double entry doors on Deck 11 are a popular means of ingress and egress between Deck 11's amenities and other areas of the ship.

57.     Upon information or belief, NCL knows from prior slip and fall incidents on Deck 11 and on floors similar to the flooring on which KATHRYN BAKER fell that the flooring becomes dangerously slick when wet and causes people to fall. NCL documents slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

58.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations

such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

59.    NCL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to NCL where NCL invite or reasonably expect passengers to go. NCL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  NCL train its crew members to warn passengers of hazardous or slippery conditions verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from walking on the hazardous and/or slippery condition.

60.    **NCL BREACHES OF DUTY.**  NCL breached its duty to warn KATHRYN BAKER of dangerously slippery condition of the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018.  NCL breached its duties to the Plaintiff by its actions and conduct.  NCL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018. NCL' crew members failed to reasonably and regularly make audible announcements that the outdoor stairways were dangerously slippery when wet. NCL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendants in the proof of negligence or

proof of the absence of negligence. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

61.     **PROXIMATE CAUSE**: NCL's failure to properly warn KATHRYN BAKER of the dangerously slippery condition of the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018, proximately caused the Plaintiff's injuries. Had NCL properly warned KATHRYN BAKER of the slippery condition of the deck, KATHRYN BAKER would have been aware of the dangerously slippery condition of the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018. KATHRYN BAKER therefore would have never slipped and fell on the of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* on November 17, 2018.

62.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff, KATHRYN BAKER, demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability,

physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT TRAINING OF PERSONNEL**

63.     The Plaintiff, KATHRYN BAKER, hereby adopts and re-alleges each and every allegation in Paragraphs 1-22, above.

64.     This is an action for negligence of NCL negligent training of shipboard crewmembers.

65.     **DUTIES OWED BY THE DEFENDANTS**.  NCL owes a "duty to exercise reasonable care for the safety of its passengers," including KATHRYN BAKER. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

66.     NCL owes a duty as a common carrier to its passengers to train its crew members warn of dangers known to NCL where NCL invite or reasonably expect passengers to go.  NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the *NCL Pride of America*.  Areas like Deck 11 on NCL *Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones

on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes training its crew members to warn passengers of dangerous walking surfaces present in and around Decks 11, including the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* where KATHRYN BAKER slipped and fell on November 17, 2018.

67.    NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

68.    NCL train its shipboard crewmembers to warn passengers of the dangerous slippery conditions including the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*, that may cause passengers to slip and fall. NCL knew or should have known of the importance of training its crewmembers to warn passengers of the dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall. NCL train its crewmembers that passenger may not know that surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, may be dangerously slippery and could cause them to slip and fall. NCL knew or should have known the importance of training its crewmembers that passenger may not

know of the dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11. NCL train its crewmembers to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from slipping and falling. NCL knew or should have known of the importance of training its crew members to warn passengers of tripping hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from slipping and falling. NCL also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.   NCL documents dangerous hazards and prior slip and falls in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing. However, despite knowing how and the reason why NCL should train its crewmembers, NCL failed to do so.

69.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

70.     NCL's duty to properly train its crewmembers is part of NCL's duty of reasonable care under the circumstances. This duty requires NCL to properly train its crew members to properly

to warn passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall.

71.     **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to KATHRYN BAKER and was negligent by failing to reasonably train its crewmembers to warn passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

72.     At the time KATHRYN BAKER, slipped and fell on the walkway outside of the double entry doors on Deck 11, the crewmember that was responsible for warning, cleaning and maintaining that deck failed to so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like KATHRYN BAKER, of the dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall. Further, because that crew member was not properly trained that crew member failed to clean and maintain the walkway outside of the double entry doors on Deck 11.

73.     **PROXIMATE CAUSE**: NCL's failure to properly train NCL crew members proximately caused KATHRYN BAKER's injuries.  Had NCL properly trained NCL's crew members to warn passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall, the crewmember would have warned KATHRYN BAKER of the dangerously slippery condition of the walkway outside of the double entry doors on Deck 11 and

KATHRYN BAKER would have been aware of the dangerous condition. KATHRYN BAKER therefore would never have slipped and fallen on the walkway outside of the double entry doors on Deck 11.

74.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, Plaintiff, KATHRYN BAKER, demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT SUPERVISION OF PERSONNEL**

75.     The Plaintiff, KATHRYN BAKER, hereby adopts and re-alleges each and every allegation in Paragraphs 1-22, above.

76.     This is an action for negligence of NCL negligent supervision of shipboard crewmembers.

77.     **DUTIES OWED BY THE DEFENDANTS**.   NCL owes a "duty to exercise reasonable care for the safety of its passengers," including KATHRYN BAKER. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

78.     NCL owes a duty as a common carrier to its passengers to supervise its crew members to ensure NCL's crew members are properly warning passengers of dangers known to NCL where NCL invite or reasonably expect passengers to go.   NCL owes a duty of reasonable care under the circumstances. The circumstances are that NCL owns and/or manages more than seventeen (17) cruise ships, including the *NCL Pride of America*.   Areas like Deck 11 on *NCL Pride of America*, feature amenities like food stations, pools, Jacuzzi's, and lounge areas, which means that the walkways are subject to significant passenger traffic as well as contaminants, like water, condensation, food, drinks, and other slick substances. NCL features walkways inside and outside of double entry doors as a means of ingress and egress like the ones on Deck 11 on many, if not all its vessels—areas where passengers transit in large numbers from one defined area of the ship to the next. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which NCL is well-aware. For these reasons, NCL's duty of care includes supervising its crew members to ensure that passengers are properly warned of dangerous walking surfaces present in and around

Decks 11, including the walkway where KATHRYN BAKER slipped and fell on November 17, 2018.

79.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

80.     NCL should have become aware that the crew member(s) was failing to properly warn passengers of the dangerously slippery conditions on surfaces on board the *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11.

81.     NCL should have become aware that NCL's crew member(s) were failing to properly warn passengers of the dangerously slippery conditions of surfaces on board the *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11 for several reasons, including but not necessarily limited to the following. First, NCL should have become aware of their crew member(s) failures given that the dangerous condition existed for an extend period of time without a crew member tending to the dangerous condition or appropriately waning passengers of the dangerous condition. Second, NCL should have become aware of their crew member(s) failures because of prior slip and fall incidents on Deck 11 and on floors similar to the flooring on which KATHRYN BAKER slipped and fell.

82.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations

such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment. See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

83.     NCL's duty to properly supervise its crewmembers is part of NCL's duty of reasonable care under the circumstances. This duty requires NCL to properly supervise its crew members to ensure that the crew members are properly warning passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall.

84.     **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to KATHRYN BAKER and was negligent by failing to reasonably supervise its crew members to ensure that the crew members are warning passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

85.     **PROXIMATE CAUSE**: NCL's failure to properly supervise NCL crew members proximately caused KATHRYN BAKER's injuries.  Had NCL properly supervised NCL's crew members to warn passengers of dangerous slippery conditions of surfaces on board *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11, that may cause passengers to slip and fall, the crewmember would have warned KATHRYN BAKER of the dangerously slippery condition of the deck and KATHRYN BAKER would have been aware of the

dangerous condition. KATHRYN BAKER therefore would never have slipped and fallen on the walkway outside of the double entry doors on Deck 11.

86.    **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, Plaintiff, KATHRYN BAKER, demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT VI
### NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

87.    The Plaintiff, KATHRYN BAKER, hereby adopts and re-alleges each and every allegation in Paragraphs 1-22, above.

88.     This is an action for negligence due to NCL's negligent design, construction and selection of materials.

89.     **DUTIES OWED BY NCL**: NCL owes a "duty to exercise reasonable care for the safety of its passengers" including KATHRYN BAKER. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendants also owe a "duty to exercise reasonable care under the circumstances**.**" *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *NCL Pride of America.*

90.     NCL owes a duty of reasonable care under the circumstances. The circumstances are as follows: The exterior and interior of *NCL Pride of America* was built in Germany at a shipyard under the constant supervision of NCL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment. Under the contract with the shipyard, NCL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. NCL hold the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, NCL can withhold payment That includes the materials used on the walkway outside of the double entry doors on

Deck 11 aboard the *NCL Pride of America* which caused KATHRYN BAKER's fall and her injuries.

91.     The *NCL Pride of America* was delivered to NCL as finished on June 5, 2005. NCL has operated and maintained the ship continuously since that time.  NCL also owns and operates 17 other cruise ships. NCL has operated and maintained all of its ships, continuously since the time when each of those ships were first built and put into service. And NCL also custom built to specifications and designs which were made by or under the supervision and participation of all NCL's ships. The design and construction of these ships was under the supervision and with the participation of NCL's personnel who were stationed onsite in the shipyard during construction.

92.     Upon information or belief, NCL maintain shoreside departments that are responsible for the design, selection and construction of NCL' ships. Upon information or belief, NCL also maintain shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when NCL refit or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by NCL.  As such, NCL maintained the ultimate control over the design and construction of the *NCL Pride of America.* Upon information and belief, NCL's contract with the shipyard allowed NCL to make progressive payments as work was completed. NCL payment scheme allowed NCL the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

93.     NCL chose to create, design, and construct all of the surfaces on board the *NCL Pride of America* including the walkway outside of the double entry doors on Deck 11.

94.     NCL should have known that the walkway it chose to create, design, and construct outside of the double entry doors on Deck 11 was reasonably dangerous.

95.     NCL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  NCL's ingress and egress walkways are escape routes that NCL knew or should have known it must maintain in a safe, clear, clean and secure condition.

96.     Upon information and belief NCL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways, staircases and floor materials. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of star and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines  (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

97.     NCL's duty to design, construct and select materials for all areas and features of its vessels, including the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*, is part of NCL's duty of reasonable care under the circumstances. NCL had a duty to design and construct walkways aboard the *NCL Pride of America* in a reasonably safe manner and in accordance with industry standards.  NCL's duty is part of its duty of reasonable care under the circumstances.

31

98.   **NCL BREACHED ITS DUTY**: NCL breached its duty of care owed to KATHRYN BAKER and was negligent by failing to design, construct, select, approve and/or reject the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*. NCL failed to design, construct, select, approve and/or reject materials that complied with industry standards. The design and/or materials NCL selected and used to construct the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* was unreasonably dangerous.

99.   Because NCL had the ultimate control over the design, construction and selection of materials for its ships, NCL could refuse to approve the design, construction and selection of materials used for the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*. NCL knew or should have known about the dangerousness of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*.

100.   NCL knew or should have known of the dangerousness of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America* since their installation in 2005 and/or any changes or modifications in 2013 or 2016. NCL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

101.   **PROXIMATE CAUSE**: NCL's negligent design, construct and select materials proximately caused KATHRYN BAKER's injuries. Had NCL properly designed, constructed and selected the materials of the walkway outside of the double entry doors on Deck 11 of *NCL Pride of America*, KATHRYN BAKER would never have walked onto the dangerous walkway. KATHRYN BAKER therefore would never have slipped and fell.

102.   **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to KATHRYN BAKER in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related

expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  KATHRYN BAKER has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, Plaintiff, KATHRYN BAKER, demands Judgment against NCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:      s/ _____

**LISA C. GOODMAN, ESQ.** (FBN 118698)
lgoodman@hickeylawfirm.com
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*